United States District Court
Southern District of Texas
**ENTERED**
November 13, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARCELLOUS S. MCZEAL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:25-CV-02343 |
| | § | |
| HIGHER EDUCATION LOAN AUTHORITY | § | |
| OF THE STATE OF MISSOURI, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Now before the Court is Defendant Higher Education Loan Authority of the State of Missouri's ("Defendant" or "MOHELA") Motion to Dismiss (D.E. 9), to which Plaintiff Marcellous S. McZeal ("Plaintiff" or "McZeal") has responded (D.E. 13), and MOHELA has replied (D.E. 16). Upon consideration of the Parties' filings and relevant law, the Court is of the opinion that MOHELA's Motion to Dismiss (D.E. 9) should be GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

The following facts are taken from Plaintiff's Complaint (D.E. 1) and are accepted as true for purposes of this motion. The Court notes that the Complaint is not paginated, and the paragraphs are not numbered as required.

Plaintiff is an obligor on six Parent PLUS Loans issued by the United States Department of Education (USDOE) (the "Loans"). (D.E. 1 at 1, 6). MOHELA services these loans pursuant to a contract with the federal government. *Id.* at 2. In 2024, MOHELA notified Plaintiff that the Loans were in a deferment status and that no payments were due. *Id.* at 2, 9. Months later and without warning, the deferment expired, but MOHELA failed to provide Plaintiff with notice that the

Loans were entering a repayment status and/or information regarding the repayment amount and how that amount was calculated. *Id.* at 6. MOHELA sent bills to Plaintiff that did not accurately reflect the amount owed. *Id.* at 2, 6. During this time, Plaintiff was unable to log into MOHELA's website to obtain account details or make payments, in part because MOHELA was transitioning to a new service platform. *Id.* at 6, 9. Plaintiff attempted to raise these issues with MOHELA in writing, as well as via telephone, and experienced a wait time average of more than five hours. *Id.* at 6. When Plaintiff was able to reach MOHELA customer service representatives, they could not answer his questions or assist him. *Id.* at 8. As a result of Plaintiff's failure to make timely payments once the Loans entered a repayment status, MOHELA furnished information to all three credit reporting agencies that his Loans were delinquent, causing his credit score to drop from the high 700s into the 500s. *Id.* at 2, 10. He sent three letters to MOHELA contesting the information it had furnished to the credit agencies, but MOHELA refused to take corrective action. *Id.* at 10. Plaintiff was initially approved for a business loan of $150,000 but was later rejected because of the drop in his credit score. *Id.* at 10.

Plaintiff pursues alternative claims for violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692(e) and (f) (Count 1); violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681s-(2)(a) and (b) (Counts 2(a) and 2(b)); and common law negligence (Count 3). *Id.* at 11–16.

MOHELA moves to dismiss the entire Complaint for failure to comply with FED. R. CIV. P. 8(a)(2) and 10(b). In the alternative, MOHELA moves to dismiss Plaintiff's claims for violations of the FDCPA, violations of Section 1681s-(2)(a) of the FCRA, and negligence under FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## II. MOTION TO DISMISS UNDER RULES 8(a) AND 10(b)

### A. Law

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). Rule 8 states that a complaint "must contain," among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" FED. R. CIV. P. 8(a)(2). Under Rule 10: "A party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count[.]" FED. R. CIV. P. 10(b).

In *Weiland*, the Eleventh Circuit identified four types of "shotgun pleadings"—imprecise complaints that fail "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1321–23. The first is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. *Id.* at 1321. This leads to a 'situation where most of the counts . . . contain irrelevant factual allegations and legal conclusions." *Id.* at 1324; *Snow v. Etowah Cnty. Sheriff's Dep't*, 2020 WL 6899168, at *3 (N.D. Ala. Nov. 24, 2020). The next most common type of shotgun pleading occurs when a complaint is full of conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. *Weiland*, 792 F.3d at 1322. The third type of shotgun pleading outlined in *Weiland* is a complaint that fails to separate into a different count each cause of action or claim for relief. *Id.* at 1323. "This type of 'shotgun pleading' violates Rule 10(b)." *Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 393 (6th Cir. 2020) (citing *Weiland*, 792 F.3d at 1323 n.13).

Finally, the fourth type of shotgun pleading is a complaint that includes multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which defendant(s) the claim is brought against. *Weiland*, 792 F.3d at 1323.

"The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* "Shotgun pleadings are 'pernicious' because they 'unfairly burden defendants and courts' by shifting onto them 'the burden of identifying plaintiff's genuine claims and determining which of those claims might have legal support.'" *Greathouse v. Rosa*, 2021 WL 2953127, at *1 (D.N.M. July 14, 2021) (quoting *D.J. Young Publ'g Co. v. Unified Gov't of Wyandotte Cnty./Kansas City*, 2012 WL 4211669 at *3 (D. Kan. Sept. 18, 2012)). When a complaint fails to provide adequate notice, it is within the court's power to act *sua sponte* by ordering plaintiffs to submit a more definite statement pursuant to Rule 12(e). *See Molina v. March*, 2008 WL 11388763, at *2 (S.D. Tex. Nov. 20, 2008) (*sua sponte* ordering plaintiff to file a more definite statement pursuant to Rule 12(e)).

**B. Analysis**

MOHELA argues that the Complaint does not comply with the Federal Rules of Civil Procedure because it omits separate-numbered paragraphs and instead consists of approximately ten pages of narrative material, including numerous legal conclusions, which are then incorporated by reference into three alternative counts that also omit numbered paragraphs. As such, the Complaint is a "shotgun pleading" subject to dismissal under Fed. R. Civ. P. 8(a)(2) and 10(b).

Plaintiff responds that the Complaint includes background facts about MOHELA for the Court's context, followed by detailed factual allegations regarding the number of loans serviced, Plaintiff's attempts to communicate with MOHELA, problems with its online portal, and specific

instances of misrepresentation to both himself and the three credit agencies. Plaintiff argues that each cause of action is separately stated, and while each incorporates preceding paragraphs by reference, those incorporation clauses are not the sole factual basis for each claim. According to Plaintiff, MOHELA can clearly determine which facts and alleged acts or omissions correspond to each of the three asserted causes of action.

The Court finds Judge Ellison's opinion in *Int'l Longshoremen's Ass'n Warehouse Workers Loc. 1504-8 v. S. Atl. & Gulf Coast Int'l Longshoremen's Ass'n, AFL-CIO*, 2007 WL 7082343 (S.D. Tex. Nov. 20, 2007), useful. In it, the court recognized that, "[a]lthough Plaintiffs' amended complaint would benefit from greater brevity," it was mindful of the Fifth Circuit's reminder in *Atwood v. Humble Oil & Refining Co.*, 243 F.2d 885, 888 (5th Cir. 1957), that brevity must sometimes yield to the litigant's right and duty to present claims in a style reflecting counsel's honest effort to advocate the claims and address their strengths and weaknesses. *Int'l Longshoreman's*, 2007 WL 7082343 at *1. Here, as in *Int'l Longshoreman's*, the Complaint "appears to be an honest effort to present [Plaintiff's] claims persuasively, and it is short and plain enough for Defendant to respond to the claims without prejudice or undue confusion." *See id.* While the Complaint "would also benefit from numbered paragraphs as required by Rule 10(b)," nonconformity with that rule is excusable where, as here, Plaintiff's causes of action are "clearly and separately stated and identified." *See id.* (citing *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); 5A Charles Alan Wright & Arthur R. Miller, FED. PRAC. & PROC. § 1322 (3d ed. 2004)). Because the form of the Complaint does not impair MOHELA's ability to understand or respond to the claims, Plaintiff's nonconformity with Rule 10(b) is excused.

### III. MOTION TO DIMISS UNDER RULE 12(b)(6)

#### A. Law

A party may move to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) is read in conjunction with the pleading standard set forth in Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *see Ashcroft v. Iqbal*, 556 U.S. 662, 677–68 (2009). This standard does not require detailed factual allegations. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, a party's "obligation to provide the 'grounds' of his 'entitle[ment]' to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). To survive a Rule 12(b)(6) motion, the complaint and any other matters properly considered[1] must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual content allows the court, drawing upon its "judicial experience and common sense," to reasonably infer that the defendant is liable for the misconduct alleged. *Id.* at 678 (citing *Twombly*, 550 U.S. at 556), 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief.'" *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

---

1. "Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)); *see also Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (court's review on 12(b)(6) motion "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint").

### B. Analysis

### 1. Count 1: Fair Debt Collection Practices Act ("FDCPA")

Plaintiff alleges that MOHELA is a "debt collector" pursuant to 15 U.S.C. § 1692(a)(6) and that it violated the FDCPA, 15 U.S.C. § 1692(e), by: (1) failing to notify him when his loan moved from deferment to repayment and not providing clear repayment terms (such as duration, monthly amount, interest, and options); (2) misleading him regarding his loan status and payment calculations; and (3) engaging in deceptive practices by misrepresenting and omitting material information about his Loans, restricting access to account details, and failing to offer genuine repayment assistance. (D.E. 1 at 11).

MOHELA moves to dismiss Plaintiff's FDCPA claim because MOHELA is not a "debt collector," as it did not begin servicing the Loans after default. *See Brumberger v. Sallie Mae Servicing Corp.*, 84 Fed. App'x 458, 459 (5th Cir. 2004) (affirming dismissal because, "[b]y its plain terms the FDCPA does not apply to Sallie Mae because [plaintiff] does not allege that he was in default at the time Sallie Mae began servicing his loans"); *Diaz v. First Marblehead Corp.*, 643 Fed. App'x 916, 919 (11th Cir. 2016) (noting that "other circuits, as well as district courts, have held that creditors and loan servicers are not 'debt collectors' for purposes of the FDCPA if they acquired or began servicing a loan prior to the debtor defaulting") (collecting cases); *Cedeno v. Navient Sols., Inc.*, 2017 WL 7794290, at *4 (S.D. Fla. Apr. 26, 2017) (student loan servicer was not a "debt collector" where it began servicing plaintiff's loan prior to default). MOHELA further argues that is exempted from liability under the FDCPA because it was, at all pertinent times, acting in its capacity as a bona fide fiduciary to the USDOE. *See Murungi v. Texas Guaranteed*, 693 F. Supp. 2d 597, 608 (E.D. La.), *aff'd*, 402 F. App'x 849 (5th Cir. 2010) ("A debt collector does not include, however, 'any person collecting or attempting to collect any debt . . .

to the extent such activity . . . is incidental to a *bona fide* fiduciary obligation. . . .'") (quoting 15 U.S.C. § 1692a(6)(F)(i)).

Plaintiff concedes his FDCPA claim and voluntarily withdraws it. (D.E. 13 at 1, n.1). Accordingly, his claim in Count 1 is dismissed.

### 2. Count 2: Fair Credit Reporting Act ("FCRA")

#### a. Complaint

Plaintiff alleges that MOHELA is a "furnisher of information" under the FCRA and that it violated the FCRA by engaging in "willful and negligent noncompliance" of 15 U.S.C. §§ 168ls-2(a), (b) by: (1) failing to properly investigate the accuracy of his Loan account before reporting it as delinquent to credit reporting agencies; (2) intentionally failing to correct this information with the credit agencies; and (3) continuing to provide false and damaging credit data to credit agencies, despite knowing the information was incorrect. (D.E. 1 at 12–13). As a result, MOHELA caused Plaintiff significant harm, including emotional distress, economic losses, and a lowered credit score that prevented refinancing and maintaining existing credit. *Id.* at 13.

#### b. Law

The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 52 (2007) (citing 15 U.S.C. § 1681; *TRW Inc. v. Andrews*, 534 U.S. 19, 23 (2001)). The FCRA requires "credit reporting agencies to maintain 'reasonable procedures' designed 'to assure maximum possible accuracy of the information' contained in credit reports, § 1681e(b), and to 'limit the furnishing of [such reports] to' certain statutorily enumerated purposes, § 1681e(a)." *TRW Inc.*, 534 U.S. at 23 (alteration in original). The FCRA also imposes "two general duties on those who give credit information to credit reporting agencies: (1) 'a [d]uty of furnishers of

information to provide accurate information,' 15 U.S.C. § 1681s-2(a); and (2) '[d]uties of furnishers of information upon notice of dispute,' including to investigate disputes, correct inaccurate information, and inform the credit reporting agency of an investigation's results, 15 U.S.C. § 1681s-2(b)." *Eustice v. JPMorgan Chase & Co.*, 2019 WL 3067507, at *2 (S.D. Tex. July 12, 2019).

### c. Analysis

#### i. Count 2(a): 15 U.S.C. § 1681s-(2)(a)

MOHELA moves to dismiss Plaintiff's FCRA claim under 15 U.S.C. § 1681s-(2)(a) because section 1681s-(2)(a) does not provide a private cause of action to consumers like Plaintiff. *See Black v. De La Torre*, 2021 WL 2019202, at *5 (S.D. Tex. May 20, 2021) ("There is no private right of action under the FCRA against a furnisher of credit for breaching the duty to provide a credit reporting agency with accurate information in violation of 15 U.S.C. § 1681s-2(a).") (citing *Egwurube v. Discover Fin. Servs.*, 2021 WL 260769, at *3 (S.D. Tex. Jan. 4, 2021); *Burress v. Chase Card*, 2020 WL 1216703, at *2 (N.D. Tex. Feb. 18, 2020)).

Plaintiff concedes his FCRA claim under 15 U.S.C. § 1681s-2(a) and voluntarily withdraws it. (D.E. 13 at 1, n.1). Accordingly, his claim in Count 2(a) is dismissed.

#### ii. Count 2(b): 15 U.S.C. § 1681s-(2)(b)

Although a private right of action exists under section 168ls-2(b), a plaintiff seeking to state a claim against a furnisher of information under this provision must allege that: "'(1) he disputed the accuracy or completeness of information with a consumer reporting agency; (2) the agency notified the furnisher of the consumer's dispute; (3) and the furnisher failed to conduct an investigation, correct any inaccuracies, or notify the agency of the results of the investigation.'" *Egwurube*, 2021 WL 260769, at *3 (quoting *Shaunfield v. Experian Info. Sols., Inc.*, 991 F. Supp.

2d 786, 805 (N.D. Tex. 2014)); *see also Eustice*, 2019 WL 3067507 at *3 (furnisher would only have a duty under section 1681s-2(b) if the consumer first disputed credit information with a credit reporting agency and that credit reporting agency then informed the furnisher of the dispute).

Here, Plaintiff alleges that he notified the credit reporting agencies Equifax, Experian, and TransUnion that their reports concerning his MOHELA debt were inaccurate and provided copies of relevant documents to them, and the agencies notified MOHELA that Plaintiff was disputing the information MOHELA furnished to them. (D.E. 1 at 12). Plaintiff also "sent two letters first-class mail and a certified letter to MOHELA, contesting the information it had sent to all 3 credit bureaus" and provided relevant documents to MOHELA regarding the dispute, but MOHELA refused to take the corrective measures required by the FCRA. *Id.* at 10, 12.

The Court finds that Plaintiff has stated a claim under 15 U.S.C. § 168ls-2(b) for violation of the FCRA.

### 3. Count 3: Common Law Negligence

#### a. Complaint

Plaintiff alleges that MOHELA owed him a duty of reasonable care in managing his Loans—including timely communicating with him regarding the status of his IDR application,[2] providing him the ability to monitor the status of the application, and providing an opportunity to cure any deficiencies—which arose from the fiduciary relationship created when Plaintiff entrusted MOHELA with servicing his Loans. (D.E. 1 at 13). MOHELA breached its duty of care by: (i) failing to timely and effectively communicate with Plaintiff about the Loans, including the status of the Loans and calculation of repayment amount; (ii) blocking Plaintiff from telephonic

---

[2]. "Income-driven repayment (IDR) plans are repayment plans that base the borrower's monthly payment amount on the borrower's income and family size." 34 C.F.R. § 685.209.

and online communication about the details of his Loans; (iii) failing to maintain accurate information online reflecting the historical and present condition of the Loans; and (iv) failing to accurately calculate and report to credit bureaus the amount owed by Plaintiff. *Id.* at 14. Plaintiff claims that MOHELA knew or should have known that its deficient processes—such as untimely communication, inaccurate status reporting, and failure to act within industry standards—would harm him. *Id.* But for MOHELA's breaches of its duties of care, Plaintiff would not have suffered harm, including damage to his credit score and the loss of an approved $150,000 loan. *Id.*

## b. Law

To state a claim for common law negligence in Texas, "a plaintiff must establish three elements: '(1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach.'" *Ford v. Cimarron Ins. Co.*, 230 F.3d 828, 830 (5th Cir. 2000) (quoting *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990)). "Duty is the threshold inquiry of any negligence case." *Id.* (citing *Phillips*, 801 S.W.2d at 525). "In Texas, moreover, whether a duty exists is a question of law for the court to decide from the facts surrounding the occurrence in question." *Id.*

## c. Analysis

### i. Duty

MOHELA argues that Plaintiff fails to state a claim for negligence because a student loan servicer does not owe a common law duty of care to a borrower. *See, e.g.*, *Milton v. U.S. Bank Nat. Ass'n*, 508 F. App'x 326, 329–30 (5th Cir. 2013) (unpublished) (dismissing negligence claims against mortgage servicer "because, under Texas law, there is 'no special relationship between a mortgagor and mortgagee' that would give rise to a stand-alone duty of good faith and fair dealing") (quoting *UMLIC VP LLC v. T & M Sales & Envtl. Sys., Inc.*, 176 S.W.3d 595, 612 (Tex.

App.–Corpus Christi, 2005, pet. denied)); *Lerma v. CitiMortgage, Inc.*, 2014 WL 12599346, at *1 (S.D. Tex. Apr. 17, 2014) ("[U]nder Texas law, a mortgage servicer does not owe a duty that would support either Plaintiffs' negligence claim . . . or breach of fiduciary duty claim."). As a result, federal courts have repeatedly dismissed negligence claims by borrowers against student loan servicers. *See, e.g.*, *Love v. Pa. Higher Educ. Assistance Agency*, 2020 WL 1545798, at *6 (N.D. Ga. Mar. 16, 2020) ("Plaintiffs have not pointed to any specific authority that would support their argument that [student loan servicer] PHEAA owed them a legal duty, much less a fiduciary duty. Without such authority, their negligence claim fails."); *Winebarger v. Pa. Higher Educ. Assistance Agency*, 411 F. Supp. 3d 1070, 1092 (C.D. Cal. 2019) (stating that "loan servicers do not owe general duties of care to borrowers" and dismissing negligence claim against student loan servicer); *Hyland v. Navient Corp.*, 2019 WL 2918238, at *11 (S.D.N.Y. July 8, 2019) (dismissing negligence claim against student loan servicer, explaining that servicers do not owe tort duties to borrowers and that allegations that servicer held a "special position of confidence and trust" or "actively held itself out as a source of guidance and expertise with respect to student loan repayment" were insufficient). Plaintiff does not cite any case holding that a student loan servicer owes a duty to a borrower sufficient to give rise to a negligence claim.

### ii. Preemption

Plaintiff argues that his negligence claim is nonetheless viable because the FCRA imposes duties on loan servicers with respect to any dispute it receives regarding credit reporting. *See* 15 U.S.C. § 1681s-2(b). MOHELA responds that any such claim is preempted by the FCRA.

"Section 1681h(e) of the FCRA preempts defamation and negligence claims arising under state law unless the plaintiff can prove malice or willful intent to injure." *Licata v. Wells Fargo Dealer Servs., Inc.*, 2013 WL 12155020, at *2 (S.D. Tex. Oct. 31, 2013) (citing 15 U.S.C. §

1681h(e) ("[N]o consumer may bring any action or proceeding in the nature of . . . negligence with respect to the reporting of information against . . . any person who furnishes information to a consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer."); *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 638 (5th Cir. 2002)). *See also Perry v. Lockhart, Morris & Montgomery, Inc.*, 2024 WL 1840484, at *6–7 (S.D. Tex. Apr. 26, 2024), report and recommendation adopted, 2024 WL 2193404 (S.D. Tex. May 15, 2024) (noting the FCRA's preemption of state law claims, including negligence, arising out of the same alleged conduct in the absence of allegations of malice or willful intent); *Wilborn v. Equifax, Inc.*, 2019 WL 507495, at *1–2 (S.D. Miss. Feb. 8, 2019) (dismissing negligence claim as preempted by the FCRA and noting that "[b]y its very nature, negligence does not imply conduct undertaken with malice or willful intent to injure, and [the] Complaint alleges no such conduct by Defendants"). "Pleading 'malice' for purposes of FCRA preemption requires the plaintiff to plead that the defendant made the statements 'knowing the statements were false or with a reckless disregard of whether they were false.'" *Licata*, 2013 WL 12155020 at *2 (quoting *Morris v. Equifax Info. Servs., LLC*, 457 F.3d 460, 471 (5th Cir. 2006)). "Reckless disregard requires 'sufficient evidence to permit the conclusion that the defendant *in fact entertained serious doubts* as to the truth of his publication.'" *Id.* (emphasis in *Morris*). Here, Plaintiff has failed to allege that MOHELA reported false information to credit agencies with "malice or willful intent to injure" him.

### iii. Negligent Misrepresentation

Finally, Plaintiff argues that "there is ample precedent under Texas law that a lender or loan servicer can be liable for negligent misrepresentations to a borrower." (D.E. 13 at 11) (citing *Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (bank possessed duty of

reasonable care when providing information to customers regarding loans or potential loans, and breach of this duty constituted negligent misrepresentation); *TIB-The Independent BankersBank v. Canyon Community Bank*, 13 F. Supp. 3d 661, 671 (N.D. Tex. 2014) (noting that plaintiff's "negligent misrepresentation claim is based on the allegation that [lender] supplied false information about the borrower's deposit and financial condition in connection with the Loan"). However, Plaintiff has not alleged a claim for negligent misrepresentation, which is a separate and distinct cause of action under Texas law. *See H.C. Oil & Gas Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2005 WL 265166, at *11 (N.D. Tex. Feb. 2, 2005) ("Negligence and negligent misrepresentation are different causes of action under Texas law, with different elements.").[3] He cannot amend his Complaint through briefing; new claims must be pleaded by amendment. *See Middleton v. Life Ins. Co. of N. Am.*, 2010 WL 582552, at *5 (S.D. Tex. Feb. 12, 2010) (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)).

The Court finds that Plaintiff has failed to state a claim for negligence under Texas common law. Accordingly, his claim in Count 3 is dismissed.

---

3. To state a claim for negligent misrepresentation, the plaintiff must allege that:

(1) the defendant made a representation in the course of his business, or in a transaction in which he had a pecuniary interest, (2) the defendant supplied false information for the guidance of others in their business, (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information, and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation.

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 318 (5th Cir. 2002). "By contrast, 'the elements of a negligence cause of action are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach.'" *H.C. Oil & Gas*, 2005 WL 265166 at *11 (quoting *IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004)).

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART**

MOHELA'S Motion to Dismiss (D.E. 9) as follows:

1) The Court **DENIES** MOHELA's motion to dismiss the Complaint pursuant to FED. R. CIV. P. 8(a)(2) and 10(b), and

2) The Court **GRANTS** MOHELA's motion to dismiss Plaintiff's claims for violations of the FDCA, 15 U.S.C. §§ 1692(e) and (f) (Count 1); violation of the FCRA, 15 U.S.C. § 1681s-(2)(a) (Count 2a); and common law negligence (Count 3).

SO ORDERED November 13, 2025, at McAllen, Texas.

Randy Crane
Chief United States District Judge